R. C. ANDREWS *et al.* v. GERTRUDE GOODMAN *and* STATE AUTOMOBILE MUTUAL INSURANCE COMPANY OF COLUMBUS, OHIO

(No. 7909)

Submitted November 21, 1934. Decided December 18, 1934.

*B. B. Bridge, Rummel, Blagg & Stone, H. Rummel Anderson* and *Bernard Sclove,* for plaintiff in error.

*Charles M. Love,* for defendants in error R. C. Andrews and D. H. Stephenson.

*J. E. Springston* and *Fred O. Blue,* for defendant in error Samuel Stephenson.

MAXWELL, JUDGE:

On the 20th of October, 1932, Samuel Stephenson recovered judgment on verdict against Gertrude Goodman for $7,500.00 and costs. This was the result of an action for damages for personal injury suffered by Stephenson when he was struck by an automobile driven by Miss Goodman, May 6, 1932.

At the time Stephenson was injured, Miss Goodman was the owner of a public liability insurance policy which had been issued to her by the State Automobile Mutual Insurance Company April 20, 1932. After investigating the accident, the insurance company informed Miss Good-

man by letter of June 23, 1932, that on account of her violation of certain terms of her policy the company would not assume any responsibility incident to the said accident. The action of Stephenson against Miss Goodman was instituted in July, 1932.

In May, 1928, R. C. Andrews and D. H. Stephenson obtained judgment against Samuel Stephenson and B. J. Stephenson for $9,773.80. On October 21, 1932, the said judgment creditors caused an execution to be issued on their judgment, and made suggestion that there was liability by reason of the lien of said execution, upon the insurance company because of the aforementioned judgment of Samuel Stephenson against Gertrude Goodman. On February 16, 1933, Samuel Stephenson caused execution to be issued on his said judgment against Miss Goodman and suggested that the insurance company was subject to liability on account of the lien of said writ. Summons on each of the said suggestions was duly served on the insurance company. It answered, denying liability, and filed specifications of defense.

The circuit court, sitting without a jury, found that the defenses of the insurance company were not well grounded; that because of the indemnity policy which it had issued to Gertrude Goodman prior to May 6, 1932, it was obligated to satisfy the judgment which Samuel Stephenson recovered against her; that because of the suggestion proceeding which was instituted against the insurance company by R. C. Andrews and D. H. Stephenson on account of the judgment which they had theretofore obtained against Samuel Stephenson, the company should pay to the said judgment creditors the full amount of the judgment of Samuel Stephenson against Gertrude Goodman, with interest and costs. To the said finding of the circuit court, the company was awarded writ of error.

In its above mentioned letter of June 23, 1932, addressed to Miss Goodman, informing her that it would not assume any responsibility for the accident of May 6, 1932, the insurance company did not set forth any reasons for its action other than that it was on account of her violation of the terms of her policy. However, in its

specifications of defense to the said suggestion proceedings, the company fully sets forth the grounds upon which it relies. They are as follows:

First. That at the time of her injuring Samuel Stephenson, Gertrude Goodman did not have a learner's permit or an operator's or chauffeur's license as required by the Code of West Virginia, 17-6-26, and she was therefore excluded from the protection of the policy as prescribed by section 8 (e) of the Conditions, Limitations and Agreements of said policy, which said section reads: "The Company shall not be liable under any coverage afforded in the Schedule of Hazards, when the motor vehicle described herein is being used, operated, or maintained * * * (e) by any person prohibited by statute or ordinance from driving the same."

Second. False report made by Miss Goodman to the insurance company in respect of the accident.

Third. Failure of Miss Goodman to cooperate with the company in regard to the defense of Samuel Stephenson's claim for damages.

Code, 17-6-26, provides: "No person shall operate any motor vehicle or tractor upon a highway of this state unless such person, upon application, has had issued to him a learner's permit or an operator's or chauffeur's license by the state road commission under the provisions of this article." The said section further provides that an operator's or chauffeur's license shall not be issued to any person under the age of fifteen years; nor to any person who is addicted to the use of intoxicating liquors or narcotics; nor to any person who has previously been adjudged insane, or an idiot, imbecile, epileptic or feeble minded, and who has not, at the time of the application, been restored to competency by proper authority; nor to any person who because of disability or disease will not be able to exercise ordinary control over a motor vehicle upon the public highway; nor to any person who is unable to understand highway warnings or direction signs in the English language. Another section of the Code, 17-6-30, provides that any person who shall operate a motor vehicle without a license or permit as required by

law shall be fined not less than ten nor more than one hundred dollars, or imprisoned in the county jail not less than one nor more than six months, or both fined and imprisoned, in the discretion of the court.

In the light of the quoted provision of the Code, was Gertrude Goodman, at the time she injured Samuel Stephenson (she not then having a beginner's permit or a driver's or chauffeur's license), "prohibited by statute * * * from driving" an automobile on the public highway, within the meaning of section 8 (e) of the Conditions, Limitations and Agreements of her indemnity policy? That she was so prohibited and, therefore, that no liability accrued under the policy, is affirmed by the insurance company, and denied by the suggestion creditors.

The position is taken by the suggestion creditors that although Code, 17-6-26 and 30, impose a penalty (fine or imprisonment or both) upon a person who operates a motor vehicle on the public highway without a learner's permit or a driver's or chauffeur's license, the statutes contain no prohibition against such conduct; that only the other classes enumerated by the statute, such as persons under the age of fifteen or physically or mentally unfit, are prohibited; that if the legislature had meant to prohibit persons without permit or license from operating motor vehicles, such inhibition could have been made specific and unequivocal.

We cannot accept this view. The intent of the statute seems clear. It provides, in effect, that no person without a learner's permit or driver's or chauffeur's license shall operate a motor vehicle upon a public highway of the state. Code, 17-6-26. We have heretofore given a broad construction to this statute, though in a case not involving the precise point now at bar. *Saunders* v. *Boyles,* 112 W. Va. 125, 163 S. E. 814. In that case we said: "Chapter 17, article 6, section 26, Code 1931, prohibits the operation of a motor vehicle upon a highway by any person without a chauffeur's license."

The requiring of automobile drivers to have permits or licenses is an exercise of the police power of the state and is for public protection. It has been held that the

protection of other users of the highway is the primary purpose of requiring automobile drivers to be licensed. *Johnson* v. *Railroad*, (N. H.) 143 Atl. 516. On this background should rest the interpretation of statutory provisions with respect to the licensing of automobile drivers. The purpose of the statute should be effectuated.

It is true that our statute does not *in haec verba* prohibit persons without permits or licenses from operating motor vehicles on the highway, but such is the plain import of the statute. If it does not contain an actual prohibition, it makes a nearer approach to that manner of dealing with a penal matter than ordinarily appears in criminal jurisprudence. To illustrate: In modern law, murder and theft are not prohibited in the manner of the laconic and awesome "thou shalt not" of the decalogue, but interdiction against those crimes exists none the less. Ordinarily, we content ourselves by defining a crime and prescribing the penalty therefor. This means that the offense is *prohibited*.

The derivative meaning of prohibit is to hold back; to forbid by authority is a basic meaning. Where certain conduct is defined by law as a crime and penalties are prescribed therefor, we can hold only that it is forbidden by authority; it is *prohibited* by law. Though the statute under consideration does not use the word *prohibit* with respect to the driving of automobiles without permit or license, its obvious purpose is to place an inhibition or prohibition upon such conduct.

Therefore, we reach the conclusion that Gertrude Goodman, when she injured Samuel Stephenson with her automobile May 6, 1932 (she then not having a learner's permit or a driver's or chauffeur's license), was *prohibited* by statute from driving an automobile on the public highway. This brought the affair squarely within the provision of her indemnity or insurance policy which avoided liability on the part of the insurer for injury which might be caused in the driving of the therein designated automobile by any person who was at the time *prohibited* by statute from driving the same. That an insurance company has the right to make reasonable ex-

,clusions by the terms of its policy cannot be gainsaid. 1 Couch on Insurance, sec. 187; *Dry Goods Co.* v. *Ins. Co.*, 90 W. Va. 122, 110 S. E. 553.

It thus appearing that the case must be resolved in favor of the insurance company on the ground discussed, it follows that its second and third specifications of defense become immaterial.

Having ascertained that there was no primary liability on the insurance company, by reason of the personal injury inflicted on Samuel Stephenson by Gertrude Goodman, it is consequential that there is no basis for suggestion proceedings by him or his judgment creditors against the said company.

We are therefore of opinion to reverse the judgment of the circuit court, and to dismiss the suggestion proceedings with costs.

*Reversed; proceedings dismissed.*