## STATE v. THEO. HAMM BREWING COMPANY.

78 N. W. (2d) 664.

June 15, 1956—No. 36,797.

*Miles Lord,* Attorney General, and *George H. Gould,* Special Assistant Attorney General, for appellant.

*Joseph A. Maun, William R. Busch, Lee N. Johnson,* and *Bundlie, Kelley & Maun,* for respondent.

NELSON, JUSTICE.

The case under consideration involves an additional income tax assessment issued by the commissioner of taxation of the State of Minnesota against the Theo. Hamm Brewing Company as defendant. The defendant filed its corporate income tax return with the Department of Taxation for the fiscal year ending November 30, 1948, in February 1949 and at that time disclosed a tax liability of $128,070.21. The commissioner of taxation in behalf of the state

issued a proposed assessment of additional tax April 15, 1953, in the amount of $20,475.29 plus interest of $3,480.75. Later under date of May 27, 1953, the commissioner issued his order assessing the additional tax and interest. Thereafter the commissioner issued a proposed audit report reducing the additional tax assessed by the sum of $4,772.95 followed by the issuing of an order October 3, 1953, making said reduction effective and including $811.39 interest as an added item.

The result was that the net additional income tax assessed against the respondent for the fiscal year ended November 30, 1948, was $15,702.34 tax, plus $2,669.36 interest. Defendant did not pay the additional tax and interest as finally determined by the commissioner when it became due. On February 1, 1954, the commissioner commenced an action in the District Court of Ramsey County for collection of the additional tax together with penalty and interest. The case was tried without a jury. Findings of fact, conclusions of law, and order for judgment were entered. Judgment in favor of the state as plaintiff was entered against the defendant for the sum of $7,711.81 tax, together with penalty in the amount of $385.59 and interest as provided by law. The state as plaintiff appeals from the judgment insofar as it has been denied a recovery of the full amount of additional income tax assessed together with penalty and interest, less some small error in figures which is not important here.

The defendant company is a Minnesota corporation and has its principal offices in the city of St. Paul, Minnesota. It operates on a fiscal year basis of accounting, which period ends on November 30 of each year. It had duly filed its Minnesota corporation income tax return for its fiscal year ending November 30, 1944, and likewise filed its United States corporation income tax return for the same period. It appears that the defendant, in arriving at its taxable net income to the State of Minnesota for the fiscal year ending November 30, 1944, did so on the same figures used in its Federal income tax return except for certain differences in income and deductions due to differences in the respective income tax laws. It claimed a deduction in both state and Federal returns in the amount of

$150,000 which it had paid to the alcohol tax unit of the U. S. Treasury Department in the compromise of a claim. The commissioner of taxation for Minnesota disallowed the aforesaid deduction of $150,000 and in addition thereto also disallowed a deduction for salary paid to one W. H. Lang in the amount of $14,800. The defendant filed a protest, and after hearing thereon the commissioner issued an amended audit report allowing the deductions claimed in the return in full. The United States Bureau of Internal Revenue also made an audit of defendant's return and disallowed the deduction of $150,000 paid to the alcohol tax unit and in addition disallowed $4,800 of the salary paid to W. H. Lang and disallowed another minor deduction not important here. This audit resulted in a deficiency assessment of Federal income taxes against defendant for the same fiscal year in the amount of $123,711.10 plus interest. Defendant paid this deficiency assessment during its fiscal year ending November 30, 1948, in the amount of $123,711.10 tax together with $26,288.90 in interest, the full amount being $150,000. (It should be noted here that the record discloses two separate and distinct payments by defendant to the U. S. Treasury each in the amount of $150,000, it being a mere coincidence that the two amounts are the same.)

The defendant regularly filed his state and Federal corporation income tax returns for the fiscal year ending November 30, 1948. Again the defendant computed and arrived at its taxable net income to the state on the basis of the same figures used in its Federal return, any differences being due to differences in the respective laws. In the state corporate income tax return, it reported income of $7,217,590.93 and deductions of $4,667,299.73, leaving a net income of $2,550,291.20, of which $2,532,916.97 was allocable or assignable to the State of Minnesota. Of this reported income $135,368.35 represented dividends received by the defendant during the fiscal year. Against the amount of net income allocable or assignable to the State of Minnesota, the defendant claimed credits of $47,947.51 for contributions and $115,063.10 for dividend-received credit, which together with the $500 specific credit allowed by the taxing statute

left a balance of $2,369,906.36 subject to the Minnesota state income tax. The defendant thus, pursuant to its said income tax return, reported and paid a tax of $128,070.21 thereon.

Shortly after the filing of defendant's corporate state income tax return, the commissioner of taxation completed an audit of the same and issued orders under dates of May 27, 1953, and August 28, 1953, in which he determined that the defendant's net income for tax purposes for Minnesota was $2,822,359.92, which was $289,442.95 more than the amount reported by defendant in its state income tax return. It was further determined by the commissioner in the said orders that the defendant was entitled to a dividend-received credit of $113,759.61 and a contribution credit of $47,622.51 for the fiscal year ending November 30, 1948, instead of the larger amounts claimed by the defendant. This resulted in a net tax deficiency of $15,702.34 being determined against the defendant.

The defendant claims that it is entitled to an 85 percent dividend-received credit on the sum of $135,368.35 in dividends received by the defendant during the said fiscal year and that such 85 percent dividend-received credit was free from and not subject to deductions. The 85 percent dividend-received credit when computed amounted to $115,063.10. Defendant claims a deduction for administrative expenses in its said state income tax return in the amount of $254,022.77. There was an actual disallowance of $1,090.99 of the dividend-received credit claimed by the defendant, ordered by the commissioner. This disallowance was made by the commissioner on the ground that $1,283.52 of the defendant's administrative expenses was allocable against the dividends received by defendant during said year in the amount of $135,368.35 and should be, as ordered, subtracted therefrom before the defendant's 85 percent dividend-received credit was computed thereon. It is therefore clear that the commissioner disallowed 85 percent of $1,283.52 of the defendant's administrative expenses as a deduction in computing the 85 percent dividend-received credit of defendant.

In the corporate state income tax return filed for the fiscal year ending November 30, 1948, the defendant claimed as a deduction

the Federal deficiency tax assessment for the fiscal year ending November 30, 1944, in the amount of $123,711.10 tax and $26,288.90 interest. The commissioner of taxation disallowed the deduction.

The action instituted against defendant presented three issues to the district court: The question whether the commissioner had statutory authority for disallowing the item of the additional 1944 Federal taxes of $123,711.10; the item of interest on such deficiency assessment in the sum of $26,288.10, both assessments paid during the fiscal year ending November 30, 1948; and the item of $1,090.99 disallowed by the commissioner and subtracted from defendant's dividend-received credit on an adjustment of its return for the fiscal year ending November 30, 1948, the last disallowance being based upon the theory that administrative expenses totalling $1,283.52 had been incurred in the collection and production of defendant's dividend income amounting in all to $135,368.35.

It appears to be conceded that for the fiscal year ended November 30, 1944, the defendant taxpayer paid income taxes to the State of Minnesota on 97.58289 percent of its apportionable income, and on all its unapportionable income, and that for the fiscal year ended November 30, 1948, income taxes to the State of Minnesota on 99.2687 percent of its apportionable income, and on all its unapportionable income.

The trial court concluded, after a determination of the facts in this case, that the commissioner of taxation of the State of Minnesota in the orders issued May 27, 1953, and August 28, 1953, in the redetermination of the income tax liability of the defendant for its fiscal year ended November 30, 1948, erroneously disallowed the deductions which the defendant claimed it was entitled to for the fiscal year ended November 30, 1948, due to the additional 1944 Federal taxes assessed against it which included $123,711.10 tax and $26,288.90 interest thereon and which it had paid during said fiscal year. It also held that the commissioner of taxation erred in disallowing any portion of defendant's 85 percent dividend-received credit in the sum of $115,063.10 which defendant claimed on its state income tax return for the fiscal year ended November 30, 1948.

Defendant does not question the correctness of the amount of the unpaid portion of the 1948 tax, plus penalty and interest, as found by the court below.

■ Amounts paid by Minnesota taxpayers to the Federal government as income taxes are deductible from gross income reportable to the State of Minnesota pursuant to M. S. A. 290.09(3), which reads as follows:

"The following deductions from gross income shall be allowed in computing net income:

\* \* \* \* \*

"(3) Taxes paid or accrued within the taxable year, except (a) income or franchise taxes imposed by this chapter; and (b) taxes assessed against local benefits of a kind deemed in law to increase the value of the property assessed; and (c) inheritance, gift and estate taxes. Income taxes permitted to be deducted hereunder shall, regardless of the methods of accounting employed, be deductible only in the taxable year in which paid. Taxes imposed upon a shareholder's interest in a corporation which are paid by the corporation without reimbursement from the shareholders shall be deductible only by such corporation."[1]

If the taxpayer is called upon to pay to the Federal government interest on Federal income tax assessments, such amounts are deductible under the provisions of § 290.09(2). The state contends that the additional Federal tax and interest which the defendant paid in its fiscal year ended November 30, 1948, on income which it earned during its fiscal year ended November 30, 1944, is not deductible under M. S. A. 1945, § 290.10(9), as amended by L. 1947, c. 635, § 7, which states:

"In computing the net income no deduction shall in any case be allowed for:

\* \* \* \* \*

---

[1]See Hall Hardware Co. v. Gage, 197 Minn. 619, 268 N. W. 202, which held that amounts paid in 1933 as Federal income taxes on account of income earned during the year 1932 were deductible in 1933.

"(9) Expenses, interest and taxes connected with or allocable against the production or receipt of all income not included in the measure of the tax imposed by this Act."

The state as plaintiff refers to § 290.09(3) and admits that, if this statute were standing alone, of course all taxes with the exception of the three enumerated classes therein would be deductible in their entirety. It argues that M. S. A. c. 290 is highly technical in its dealing with the determination and assessment of income and franchise taxes; that most of the sections of that chapter are interrelated and depend upon other sections thereof; that therefore the deductions permitted under § 290.09 are no exception; that such deductions must be considered in conjunction with the provisions of §§ 290.10(9) and 290.18 to determine the extent to which they are allowable. The plaintiff argues that the crux of this case, therefore, revolves around the interpretation to be placed upon the words *income not included in the measure of the tax.*" (Italics supplied.)

Both sides seem to concede that the latter words are determinative. Plaintiff contends that the "measure of the tax" is the taxable net income against which the tax rates are applied. This argument seems to stem from the fact that § 290.02 dealing with taxable net income provides in part as follows:

"The tax so imposed shall be measured by such corporations' taxable net income for the taxable year for which the tax is imposed, and computed in the manner and at the rates provided in this chapter."

M. S. A. 1945, § 290.01, subd. 19, states:

"The term 'net income' means the gross income, as defined in subdivision 20 of this section, less the deductions allowed by section 290.09."

And subd. 22 of that section provides:

"The 'taxable net income' means the net income assignable to this state and shall be determined as provided in sections 290.17 to 290.20."

Plaintiff thus submits that the last foregoing statutes leave no room for either speculation or statutory construction as to the

words "income not included in the measure of the tax" as used in § 290.10(9), since the statutes are clear and unambiguous.

The defendant taxpayer answers by saying that it approves and adopts the state's contention that a clear and unambiguous statute requires no exploratory measures by this court and suggests that § 290.10(9) is "as plain as language can be devised to express a purpose"; that it clearly disallows any deductions for interest and taxes "connected with or allocable against the production or receipt of income not included in the measure of the tax imposed" under the statute; and that thus, if defendant had produced or received any income not included in the measure of the tax, there could clearly be no deduction for interest or taxes relating to such income. It further argues that, since all income produced or received by the taxpayer relevant here as disclosed by the record has been included in income subject to the measure of the tax, § 290.10(9) can have no application in this case, but that the defendant taxpayer is entitled to the full deduction for Federal income taxes and interest paid thereon during its fiscal year ended November 30, 1948, pursuant to § 290.09(3).

This court has recently held in Bremer v. Commr. of Taxation, 246 Minn. 446, 75 N. W. (2d) 470, 471, that:

"The phrase 'income * * * included in the measure of the tax' as used in M. S. A. 290.10(9) does not refer to the net or dollar volume income actually taxed by the state but to the class or classes of income subject to taxation, and therefore Federal income taxes paid on income within such class or classes may, in the year in which they are paid, be taken as a deduction on the taxpayer's state income tax return despite the fact that the taxpayer's net income subject to state taxation, within such class or classes, embraces a smaller dollar volume."

The opinion in the Bremer case fully discusses the meaning of the word "income" as it is used in and as the provisions of M. S. A. c. 290 apply to that term, and that case disposes of and determines the question of statutory construction in a similar situation as well as the application of the doctrine of estoppel, which the plaintiff has

urged as being applicable at some point in the instant case. The decision in the Bremer case was followed in Butler Trust v. Commr. of Taxation, 246 Minn. 456, 75 N. W. (2d) 476, and in Jevne v. Commr. of Taxation, 246 Minn. 457, 75 N. W. (2d) 477.

■ The plaintiff in oral argument before this court gave recognition to the filing of these decisions as being determinative of defendant's right to deduct the additional 1944 tax as assessed and the interest thereon, waiving argument on those two points. The state, however, contends that the commissioner of taxation was justified in disallowing the $1,090.99 of the 85 percent dividend-received credit of $115,063.10 which the defendant properly claimed on the return filed with the state for the fiscal year ended November 30, 1948. It seems apparent, however, that the state's contention for the right to disallow part of the taxpayer's dividend-received credit must, if it is to prevail, be based upon the same premise as the state's contention that a portion of defendant's additional Federal income tax as assessed for the fiscal year ended November 30, 1944, and interest thereon paid is not allowable as a deduction. The state asserts that no part of the dividend-received credit has been disallowed and again resorts to § 290.10(9) for its authority to disallow a portion of the dividend-received credit not connected with or allocable against the taxable net income.

The state contends that the commissioner by his audit report and assessment order disallowed a portion of the defendant's claimed deduction for administration expenses under the authority of § 290.10(9) on the ground that that portion of the administrative expenses was allocable to the dividend income for which credit was received and hence not subjected to tax; that § 290.10(9) provides that expenses, interest, and taxes allocable to income not included in the measure of the tax are not allowable deductions. The state further contends that it is important to note that the commissioner of taxation did not disallow a portion of the claimed dividend credit, and says that this credit is allowable in full under the provisions of § 290.21(3), and that there is no statutory authority for disallowing any portion of the credit authorized. The state then goes on to

claim that what the commissioner did was to disallow a portion of the defendant's administrative expenses, since obviously a portion of those expenses were directly allocable to the receipt of dividend income not subjected to tax; that a cursory examination of the audit report would indicate that a portion of the dividend credit was disallowed; but that this is not the case and the lower court was in error in so finding. It contends that the audit report discloses that the amount disallowed was computed through the dividend credit in order to determine the correct proportion allocable; however, the actual additional tax assessment was due to the disallowance of administrative expenses.

Therefore, the state's contention is that it is the commissioner's order of assessment that must stand or fall and not the audit report. Thus the state claims that, even if the audit report does show a portion of the dividend credit disallowed, if in fact the additional tax assessed is correct by reason of the fact that the respondent claimed an excessive deduction for administrative expenses, the order of assessment should be sustained, citing Brainard v. Commr. of Int. Rev. 7 T. C. 1180, 1184.

We are unable to agree that the record sustains this contention. Since the taxpayer has included all of its dividend income as income subject to tax, § 290.10 (9) can have no application. It is clear now under the recent tax decisions cited herein that the state's contention that "the measure of the tax" means "taxable net income" would call for a revision of the statute. This court does not possess such power, and we have held in the Bremer and companion cases that such meaning was never intended.

M. S. A. 290.21 in part provides:

"The taxes imposed by this chapter shall be on, *or measured by*, as the case may be, *the taxable net income* less the following credits against it: * * *." (Italics supplied.)

Again we come to a consideration of § 290.10 (9), which speaks of "Expenses, interest and taxes connected with or allocable against the production or receipt of all income not included in the measure of the tax," and which we have now held therefore clearly demon-

strates that "the measure of the tax" cannot mean "taxable net income." Reading the two statutes together, or either with any other statute forming a part of M. S. A. c. 290, has convinced us that it is clear that "the measure of the tax" or income "included in the measure of the tax" does not mean taxable net income, but rather that § 290.10 (9) was so worded in order to deny deductions for the allocable part of Federal income taxes paid on items of income wholly exempt from Minnesota tax. It cannot be taken as surplusage. It was not merely designed to fortify the statutory disallowance of expenses allocable to income earned beyond the physical borders of the State of Minnesota. Without question it provides the right to deny deduction for Federal income taxes allocable to United States bond interest[2] or to dividend income from said corporations paid out of earnings accrued between March 1, 1913, and January 1, 1933.[3] This is the state's authority for the disallowance of Federal income taxes attributable to those items, and there are no doubt others constituting income produced or received which is not within the measure of the tax.

This section of the statute when restricted in its operation to such items provides one of the logical results which the statute contemplates. Section 290.21 provides, among other credit items, for a dividend-received credit by which taxpayer may subtract from taxable net income 85 percent of the total amount of the dividends received. Under the clear terms of this statute, the defendant's 85 percent dividend-received credit must be applied as a credit after the taxable net income has been determined, since § 290.21 reads: "The taxes imposed * * * shall be on * * * the taxable net income less the following credits against it." A search of our income tax statutes discloses no provision for further diminution of the credit. The legislature detailed the extent of the dividend-received credit but made no provision whereby it might be reduced. Section

---

[2] Such interest is wholly exempt from an individual's tax pursuant to M. S. A. 290.08 (7).

[3] Such income was earned prior to the effective date of the Minnesota Income Tax Act and is wholly exempt pursuant to M. S. A. 290.01, subd. 21 (2).

290.10 (9) disallows certain expenses, interest, and taxes, but it makes no mention that credits such as disallowed here come under its sanctions. Where the statute is unambiguous, its provisions couched in plain and simple language, nothing is to be read into it, and this court is bound to follow its clear statutory directions. The state argues that § 290.10 (9) will not permit deductions for expenses attributable to income not included in taxable net income. However, the state's contention that "the measure of the tax" means "taxable net income" has been disposed of to the contrary in Bremer v. Commr. of Taxation, *supra*.

Reading §§ 290.21 and 290.10 (9) we reach the conclusion that the defendant's dividend-received credit must be deducted in full from taxable net income. We further conclude that the decisions heretofore filed in the Bremer, Butler Trust, and Jevne cases are controlling and require the same disposition in the state's disallowance of any portion of taxpayer's dividend-received credit based on dividend income received as do the foregoing items of additional tax assessments and interest thereon for the fiscal year ending November 30, 1944. We affirm the result on all points reached by the court below.

*Affirmed.*